Highmont Music Corp. *v.* J. M. Hoffmann Co.,
Appellant.

Argued October 1, 1959. Before JONES, C. J., BELL, JONES, COHEN, BOK and McBRIDE, JJ.

*Valera Grapp,* with her *Charles L. Seif,* and *Max V. Schoonmaker,* for appellant.

*Roslyn M. Litman,* with her *Litman & Litman,* for appellee.

OPINION BY MR. JUSTICE McBRIDE, November 9, 1959:

The only question is whether the court below should have granted the defendant's motion for judgment non obstante veredicto. The case was fairly tried in the court below and ably argued here.

Plaintiff, a corporation (hereinafter called Highmont), wanted to operate a retail phonograph record store in Pittsburgh. In order to rent a suitable storeroom in downtown Pittsburgh, it contacted a real estate broker who assigned its agent to negotiate a lease. The agent immediately supplied a list of available downtown storerooms. One of the properties suggested was 639 Liberty Avenue. That property was and is owned by the defendant corporation (hereinafter called Hoffmann). This building was constructed between 50 and 100 years ago and was acquired by Hoffmann as long ago as 1922. The building had been under lease to an art dealer for some considerable length of time but was vacant at the time Highmont's representatives and the real estate agent (who admittedly was acting for defendant) entered into negotiations. It was made known from the outset by Highmont that certain requirements were essential. Among those specifically enumerated was that the storeroom must have a strong floor and that a certain limited amount of money could be spent by Highmont for the purpose of any necessary improvements. During the course of the negotiations Hoffmann's agents made statements of fact concerning the condition of the premises. They represented that the floors were very strong; that they would support any weight; that the building was excellent and would not need much money to improve it so that it could be used by Highmont.[1] Subsequently

---

[1] Mr. Tessler, an officer of the plaintiff corporation, testified: "Q. . . . Was Mr. Greve (Hoffmann's Real Estate agent) told of any of the requirements that you had for the storeroom that you wanted to use? A. Yes, he was told the requirements. . . . A. The

a lease of the premises for five years, prepared by Hoffmann's real estate agent, was entered into between Highmont and Hoffmann. A rider attached to the lease contained the provisions that "Tenant agrees to accept the premises in their present condition and make all necessary repairs, improvements or alterations at their own cost and expense" and that the plaintiff leases the premises in its "present condition and to make all necessary repairs, improvements or alterations at their own cost and expense to the interior of the premises."

Highmont relied upon the statements made by the real estate agent concerning the condition of the

---

requirements, we needed a downtown location; we needed a place with very strong floors and that we needed a place that didn't take much money to fix up. . . . Q. Now, was there any special reason that you told him you needed strong floors? A. Yes. I had been told several times that the records weigh a lot, they have a lot of weight to them, and that to be able to support the weight of the records, you would have to have a strong floor to do this. . . . Q. Now, then, did Mr. Greve at that time make any statements to you concerning the condition of the building or the strength of the floors? A. Yes, he did. Q. Would you tell us what those statements were? A. Well, we went down to the basement and he flashed his light up at the rafters and said that the floors were very, very strong. He said that the place had been occupied so that the building did not need much money to fix up. He took me up to the second floor and said the same thing, that this second floor could be used as selling space and that it would not require much money to fix up. I told him we didn't have much money to put into the place. . . . Q. Now, I believe you stated that he showed you the rafters in the basement, is that right? A. Yes, it is. Q. Now, was there any reason that he stated that he had for showing you these rafters? A. Yes, he wanted to show me that there was a strong floor and the construction of the floor. Q. Did he say anything about the construction of the floor? A. Yes, he did. Q. And what was it that he said? A. He said that it had a sort of a triple flooring and that it made it very strong and it would support any weight. . . ."

building, particularly in relation to the strength of the floors. Upon taking possession it proceeded to carry into effect its plans for installing certain modern fixtures and equipment and hired an architect and contractor for this purpose. No sooner had the work on the building been started and a portion of the floor and ceiling coverings removed when important defective conditions were discovered. It was found that the floors of the building were not suitable for the weight necessary for Highmont's use; that many of the joists in the building did not span from wall to wall and were not constructed properly; that some joists were split, burned, charred and otherwise defective and the floors of the building were not capable of supporting *any* kind of business permitted under the City Code; and that at some places the floor was not sufficiently safe even for persons to stand upon. Upon inspection by city officials, in compliance with the safety provisions of the City Code, various parts of the building were condemned as unfit and dangerous for occupancy. Highmont, after discovering these defects and after extensive repairs in an attempt to correct the conditions, elected to sue for damages rather than to rescind and terminate the lease.

The case was tried and submitted to the jury on the theory that there were latent defects of which the landlord had knowledge and the tenant did not, and that the landlord's failure to disclose the existence of such latent defects as well as the affirmative misrepresentation, constituted fraud. The tenant, in such case may, at his election, rescind and terminate the lease or sue for such damages as he sustains in consequence thereof. Summary of Pennsylvania Jurisprudence, Landlord and Tenant, §66. See also *Emery v. Third National Bank of Pgh.*, 308 Pa. 504, 162 Atl. 281, and *Emery v. Third National Bank of Pgh.*, 314 Pa. 544, 171 Atl. 881.

The question raised on this appeal is whether plaintiff's evidence is of sufficient quality to warrant the submission of the case to a jury on the basis of fraud. Fraud is not presumed; it must be proved. Evidence of fraud must be "clear, precise and indubitable" and the question of determining whether the evidence presented is of that quality is a question of law. *Gerfin v. Colonial Smelting & Refining Co., Inc.*, 374 Pa. 66, 97 A. 2d 71. Where, however, the evidence meets this standard, it is for the jury to determine which evidence is true.

As is pointed out in the opinion of the court below the defendant does not seriously controvert that its building was in the condition plaintiff described after the discovery of the latent defects, nor did it contend that the money spent by plaintiff was unnecessary. Its primary contention is that plaintiff could have seen the defects as well as the defendant; that the statements as to the floors were only expressions of opinion and that plaintiff did not rely on those statements in signing the lease.

The evidence is clear that the defects which caused plaintiff to expend great sums of money were not discoverable upon reasonable observation. A person may rely upon representations made regarding those facts which are not visible upon a reasonable inspection. *Lake v. Thompson*, 366 Pa. 352, 77 A. 2d 364. It is not necessary that absolute proof of knowledge or of concealment be shown, for if the defendant had no knowledge of the defective condition of the floors it should not have made the statement that the floors were "very, very strong", etc. A material misrepresentation may be found whether Hoffmann actually knew the truth or not, especially where, as here, it was bound to ascertain the truth before making the representation. The building in question had been owned

by it for an extended period of time. The evidence presented as to the condition of the building is such that the jury could quite properly infer that defendant had knowledge of the latent defects. Misrepresentations made under such circumstances are fraudulent. *LaCourse v. Kiesel,* 366 Pa. 385, 77 A. 2d 877.

The contention that the statements of Hoffmann's agent as to the condition of the floors was merely a statement of opinion is also without merit. The statement that "the floors were very, very strong" when coupled with the further statement that the building had "triple flooring" which made the floor strong enough to "support any weight", is more than a mere expression of opinion. Rather, they are statements of existing material facts which were found later to be untrue. They knew for what purpose Highmont needed the storeroom, thus to make such representations without knowing their truth or falsity is fraudulent in itself.

As to Hoffmann's contention that one of the necessary ingredients of Highmont's case, i.e., whether it relied upon the statements made by Hoffmann's agent as to the condition of the floor, is in this case a question for the jury and was resolved in plaintiff's favor. It is true that the record does contain matters which show that other considerations entered into Highmont's choice of the premises in question, but the law does not require plaintiff to prove that the representation as to the floors was the sole inducement for selecting this building. In *Neuman v. Corn Exchange National Bank & Trust Company,* 356 Pa. 442, 51 A. 2d 759, we said: "The law does not require a deceived party to prove that defendant's false and fraudulent representations were the 'sole reason and inducement for the plaintiff to invest his money'; it is sufficient that they 'constituted a material inducement thereto' . . ."

The jury reasonably could have found that defendant's representations thereto did constitute a material inducement in the selection of this building.

In respect of the contention that the rider provision of the lease that "the tenant has inspected the premises and accepts the property in its present condition" nullifies the alleged misrepresentation, this Court held in *Berger v. Pittsburgh Auto Equipment Co.*, 387 Pa. 61, 127 A. 2d 334, that this "would be a valid argument as to any condition of the property reasonably ascertainable, but only as to such conditions can it be held that the tenant was bound by this provision." The condition existing in this case was clearly not "reasonably ascertainable."

The judgment of the court below is affirmed.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.