409 A.2d 425

**John GLANSKI, Jr. and Carole L. Glanski**

**v.**

**Bruce W. ERVINE, Singleman and Elmer C. Graff and Cecilia A. Graff, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued March 21, 1979.

Filed Aug. 31, 1979.

Barry W. Kerchner, Pottstown, for appellants.

L. Dale Pretz, Pottstown, for appellees.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from a judgment entered on a jury verdict against appellants Bruce Ervine and Elmer Graff[1] in an action in trespass alleging fraud. Appellants argue that it was error for the lower court to have refused to grant their motion for judgment n. o. v.

In considering a motion for judgment n. o. v., the evidence, together with all reasonable inferences capable of being drawn therefrom, must be viewed in the light most favorable to the verdict winner. *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973). The court must find and consider only that evidence which supports the verdict, and all conflicts must be resolved in favor of the prevailing party. *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43, *allocatur refused*, 205 Pa.Super. xxxvii (1965). . . . In the present case, therefore, this Court must consider whether the evidence, reviewed in the light of these principles, can in any way support a finding of liability against appellant.

*Winkler v. Seven Springs Farm, Inc.*, 240 Pa.Super. 641, 643–644, 359 A.2d 440, 441 (1976).

Viewed in this way,[2] the evidence established the following.

As of August, 1973, appellant Ervine owned a farm near Pottstown, where he had lived for years with his father, who died in 1972. Desiring to sell the farm, Ervine entered into an agreement with appellant Graff, a longtime acquaintance who was in the real estate business; it was agreed that a five-acre parcel containing the house and barn would be sold; Graff was to handle the sale, and himself acquired an option to buy.

1. The lower court entered a directed verdict in favor of Cecilia A. Graff.

2. Our account of the evidence includes evidence that appellants argue was admitted in violation of the parol evidence rule. For reasons discussed *infra*, we reject appellants' argument.

Appellees responded to a newspaper advertisement and were shown the property in early August, 1973. The property was in extreme disrepair. Junk lay all about. The barn needed structural repair. The house was cluttered and dirty, and the porch was falling down. Appellee Glanski attempted to examine the basement. The front section of the basement, where the heater was, appeared in good repair, but the back section could not be examined because it was dark and the lighting was not working. A day or two later, appellees again visited the property, and this time Glanski took a flashlight into the cellar. He found, however, that the back section was filled with junk and broken bottles, so that he could not move about. Using the flashlight, he looked as best he could from where he was standing, and thought it looked "pretty good." N.T. 12.

Graff instructed appellees not to discuss the sale with Ervine, because he was an "odd fellow." Appellees saw Ervine several times but never exchanged more than greetings with him. However, they repeatedly asked Graff whether the house was structurally sound, and were repeatedly told that it was sound and livable. Glanski specifically asked if there were termites. Graff replied, "I don't even know what a termite looks like." N.T. 12. On cross-examination Glanski was asked:

Q. It's safe to say, I believe, that Mr. Graff never told you that there were no termites in the house, he only said that the house was livable, isn't that correct?

A. No. Down at the barn, I asked him about termites, he said there was no termites, as far as he knows.

N.T. 99.

On September 5, 1973, appellees entered into an agreement with Ervine and the Graffs to buy the property. The agreement contained a clause saying:

It is understood and agreed that Purchaser is accepting the said property in an "as is" condition.

Closing was held March 6, 1974.[3]  Shortly thereafter, Glanski set up some lighting in the cellar and found that the beams were infested with termites.  On the first floor, he discovered that termites had chewed a hole in the floor; until then, the hole had been covered by a large piece of Ervine's furniture.  Door frames were found to have been eaten away, with only a shell of paint remaining.  In short, the house was structurally unsound and unfit for habitation.  Confronting Ervine with this discovery, Glanski was told, "Didn't Elmer [Graff] tell you?"  Ervine went on to say that he had been spraying for termites and that Graff was supposed to have told the Glanskis about the termites.

Appellants argue that in admitting evidence of Graff's oral representations about the soundness of the house the lower court violated the parol evidence rule.

This court has recently stated the parol evidence rule as follows:

> Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

*LeDonne v. Kessler*, 256 Pa.Super. 280, 286–87, 389 A.2d 1123, 1126 (1978) (footnote omitted), *quoting Bardwell v. The Willis Co.*, 375 Pa. 503, 506, 100 A.2d 102, 104 (1953).

This statement reflects an attempt to reconcile two apparently conflicting lines of Supreme Court cases.

The "more traditional statement" of the rule, *National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 375, 381

**3.** A second agreement had to be executed because the first was contingent on appellees selling their home, which they failed to do in the requisite time; thus the delay in closing.  The second agreement was virtually identical to the first.

A.2d 963, 966 (1977), is that "evidence that one of the parties was *induced to enter the contract* through fraud or misrepresentation is not barred by the parol evidence rule." *Id.,* 252 Pa.Super. at 374, 381 A.2d at 965 (emphasis supplied). This exception was authoritatively established in *Berger v. Pittsburgh Auto Equipment Co.,* 387 Pa. 61, 127 A.2d 334 (1956). In that case, a lessor rented the second floor of a property to a lessee who, the lessor knew, needed the property to store heavy automobile parts. The lessor assured the lessee that the flooring would support the items. In reliance on this representation, the lessee executed the lease, with a contemporaneous written agreement that he "has inspected the premises and accepts the property in its present condition". The floor was subsequently found to be incapable of bearing a fraction of the weight involved. The Supreme Court (in the context of a petition to open judgment against the lessee) held that the parol evidence rule was inapplicable because the lessor had by misrepresentation induced the lessee to enter the agreement. Further, the Court held, the contemporaneous written agreement that the lessee has inspected and accepted the premises in its present condition would have nullified the misrepresentation only as to reasonably ascertainable conditions. Since the weakness of the floor was not reasonably ascertainable, the lessee had a right to rely on the lessor's representation. In *Highmont Music Corp. v. J. M. Hoffman Co.,* 397 Pa. 345, 155 A.2d 363 (1959), the Court reached the same result on substantially similar facts.

In *Bardwell v. The Willis Co., supra,* however, the Court, in a "peculiar formulation" of the rule, *National Building Leasing Inc. v. Byler, supra,* 252 Pa.Super. at 375, 381 A.2d at 966, restricted the fraud exception; it held that a party could escape the parol evidence rule only by averring misrepresentation in the *execution* of the contract, *i. e.,* that the oral misrepresentation was *omitted* from the written contract by fraud, accident or mistake. An averment only that the misrepresentations had *induced* the other party to enter the agreement in the *first instance* would not be sufficient.

Thus the Court held that the parol evidence rule barred the evidence of a lessor's misrepresentation as to the premise's fitness for a bottling business, and that the lessees were bound by a provision in the lease that they had examined and were familiar with the condition of the premises.

In *LeDonne v. Kessler, supra,* and also in *National Building Leasing Inc. v. Byler, supra,* this court attempted to state a rule reconciling *Bardwell* and *Berger.* In *LeDonne,* in deciding whether to permit evidence of fraud in the inducement, following *Berger,* or to insist on an allegation of fraud in the execution, following *Bardwell,* we looked to the extent of the plaintiff's knowledge of the defects and the nature of the integration clause in the agreement. The objectionable conditions in the property purchased by the plaintiffs in *LeDonne* were of two kinds. First, the plaintiffs found that the septic system was in disrepair in spite of the seller's representations to the contrary. This defect, we held, was not ascertainable by reasonable inspection. Second, the plaintiffs found that the house's cellar was wet and its sundeck roof leaked, despite representations to the contrary made by the seller after the plaintiffs had *seen evidence of water* in both areas and specifically asked the seller about leaks. These defects, we said, were plainly ascertainable by inspection, as the plaintiffs' observations confirmed. The agreement of sale contained an integration clause saying, "The parties have full knowledge of the physical appearance of the land and buildings and of the value thereof and there are no verbal representations as to character or quality." In stressing that this clause covered precisely the observable physical conditions of the cellar and sundeck roof, we said:

> If we seriously desire to preserve the integrity of written contracts, *Rose v. Food Fair Stores, Inc.,* [437 Pa. 117, 262 A.2d 851 (1970)]; *Gianni v. R. Russell & Co.,* [281 Pa. 320, 126 A. 791 (1924)], then we must insist upon the application of the parol evidence rule when a party knows about the existence of substantial problems, yet contractually stipulates that he has received no promises about these

problems. Rather than rigidly apply the principle of *Byler* and allow circumvention of the substantive policies of the parol evidence rule by pleading niceties, we should balance the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause.[10]

[10] This model harmonizes the results in *Bardwell, Berger,* and *Byler.* In *Bardwell,* the integration clause explicitly denied the existence of the representation which the lessees later attempted to invoke. The lessees could not justifiably rely upon prior oral representations, yet sign a contract denying the existence of these exact representations. Thus, *Bardwell's* requirement that the lessees allege fraud, accident or mistake in the *execution* of the contract made good sense under the circumstances of that case. In *Berger* and *Byler,* the contract clause did not deny the existence of any representation concerning the subsequently discovered latent defect. Thus, an allegation of fraud in the inducement of the contract rather than in its execution logically sufficed to render the parol evidence rule inapplicable.

*LeDonne v. Kessler, supra,* 256 Pa. at 294, 389 A.2d at 1130–31.

Applying this test to the facts at hand, it appears that the termite damage was not "reasonably apparent." Crediting appellees' testimony, the debris in the cellar and the lighting conditions prevented them from making a reasonable inspection. Indeed, crediting appellant Graff's testimony, even if it had been possible to move about in the cellar (as Graff testified it was), the termite damage was not apparent; Graff, who testified he himself never knew of termite damage, said he had been in the cellar, moving about, using not a flashlight but a sportsman's lantern, which he shined up and down the beams. He said he saw damage to the beams that he thought was simply rot, although he had seen, at home show displays, what termite damage looked like. N.T. 338–39. Furthermore, the integration clause, although broad, did not specifically state that

no representations had been made about termites.[4]  *Compare, Bardwell v. The Willis Co., supra,* and *LeDonne v. Kessler, supra.*  We therefore hold that the lower court did not err in admitting evidence of Graff's oral representations about the soundness of the house.

Appellants argue that even with the evidence of Graff's representations admitted, their motion for judgment n. o. v. should have been granted because there was insufficient evidence of fraud to justify the jury verdict.

■  To prevail, appellees were required to prove the following elements by "clear, precise, and undubitable" evidence, *Highmont Music Corp. v. J. M. Hoffman Co., supra* : (1) that appellants made a misrepresentation of an existing fact; (2) that if the misrepresentation was innocently made, it related to a matter material to the transaction (if it was knowingly made, materiality is not required); (3) actual knowledge of the falsity of the misrepresentation, reckless ignorance of its falsity, or mere false information where a duty to know is imposed on a person by reason of special circumstances;  (4) justifiable reliance on the misrepresentation;  and (5) damage.  *Shane v. Hoffman,* 227 Pa.Super. 176, 182, 324 A.2d 532, 536 (1974).

■  Here, there was sufficient evidence to support the verdict against appellant Ervine, for he admitted he had known about the termites.  A seller has a duty to disclose conditions that are dangerous to the purchaser.  *Shane v. Hoffman, supra* ;  Restatement, Torts (Second), § 353.  In

---

4.  Obviously, the existence of an "as is" clause requires the buyer to be alert for defects, as, in this case, appellees were (and they were aware of many).  The "as is" clause, however, does not alter the nature of the inquiry that it triggers.  Alerted to defects, appellees conducted a reasonable examination and asked appellant Graff about termites.  The "as is" clause by itself did not make it any less justifiable for them to have relied on the misrepresentations.

The law leans toward protecting even the foolishly credulous against the machinations of those who would defraud.

*Lake v. Thompson,* 366 Pa. 352, 360, 77 A.2d 364, 367 (1951).

particular, a seller must disclose a termite infestation. *DeJoseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644 (1958) (per curiam affirmance of finding of liability of seller who did not disclose termite infestation); *Shane v. Hoffman, supra* (citing *DeJoseph v. Zambelli, supra* ).

██ There was also sufficient evidence to support the verdict against appellant Graff. The credibility of his statements that he did not know about the termites was for the jury to decide, especially given Ervine's statement that he had told Graff about them. *See Highmont Music Corp. v. J. M. Hoffman Co., supra* (proper jury inference); *Shane v. Hoffman, supra* (tenant's testimony that he had told owner of problems held sufficient to support finding that owner knew of problems). Furthermore, even if Graff's misrepresentation was innocent,

> [a] material misrepresentation may be found whether [seller] actually knew the truth or not, especially where, as here, it was bound to ascertain the truth before making the representation.

> *Highmont Music Corp. v. J. M. Hoffman, Co., supra*, 397 Pa. at 350, 155 A.2d at 366.

*Accord, Berger v. Pittsburgh Auto Equipment, supra.*[5]

██ Graff argues that his statements that the house had no termites and that it was sound and livable were opinion, not fact. This argument is frivolous. *See Highmont Music Corp. v. J. M. Hoffman Co., supra* (statements that floors were "very, very strong" and could "support any weight" factual, not opinion).[6]

---

**5.** Graff, because of the interest he had purchased in the property, was both seller and realtor.

**6.** As to Graff's statement that he "[didn't] even know what a termite looks like," in one sense it may be that this statement was not false, but in the context of Glanski's question—whether there were termites—the jury could have found this to be an actionable evasion of the truth. Fraud consists in "a suggestion of what is false, whether it be direct falsehood *or by innuendo." Shane v. Hoffman, supra*, 227 Pa.Super. at 181, 324 A.2d at 536 (emphasis supplied).

Nor is there any lack of evidence that the misrepresentations were material, and that appellees justifiably relied on them[7] to their detriment and suffered damage.

■■■■ Finally, appellants argue that the evidence of damages was improper because it consisted merely of Glanski's own testimony about the value of the house at the time of sale and after the termites were discovered. However, owners of property are competent to testify as to the value of their property. *Williams v. Commonwealth Department of Highways*, 423 Pa. 219, 223 A.2d 865 (1966). If Glanski was unable to apportion the value between land and house, this went to his credibility, not to his competence.[8] Nor was this proof an impermissible variation between what was alleged as damages (cost of repairs) and what was proved (diminished value).

> The first and fundamental rule in the production of evidence is that the evidence offered must correspond with what is alleged in the pleadings as the basis of the action or of the defense.
>
> 4 *Standard Pennsylvania Practice*, Ch. 17, § 65 at 475 (footnote omitted).

Here, however, whatever variance there was did not alter the cause of action (which is forbidden, *see id.*), but merely pertained to the damages, which, indeed, did not need to be pleaded at all. Pa.R.Civ.P. 1044(b). Furthermore, the tendency of the courts now is to overlook a variation between pleading and proof if that will secure substantial justice. *Domineck v. Tuskan*, 201 Pa.Super. 608, 193 A.2d 626 (1963).

Affirmed.

**7.** Mrs. Glanski at one point did testify that Graff's representations had no effect on the decision to purchase. However, she later testified to the contrary, and explained that she had been nervous during her earlier, erroneous testimony. The jury could have accepted this recantation. *See, Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973).

**8.** Indeed, the jury awarded appellees only $7,832.23, although Glanski testified that he bought the house for $45,000 and that it was worth $33,000 to $34,000 after the termite damage was discovered. The jury was correctly instructed that the measure of damages was the decreased value of the property, not the cost to repair.