531 A.2d 1125

Pamela ROBERTS, Appellant,

v.

The ESTATE OF Carl BARBAGALLO, Northwood Services, Inc., Trading and D/B/A Northwood Realty Company, and Mary Ann DiPasquale (two cases).

Pamela ROBERTS

v.

The ESTATE OF Carl BARBAGALLO, Northwood Services, Inc., Trading and D/B/A Northwood Realty Company, and Mary Ann DiPasquale.

Appeal of NORTHWOOD SERVICES, INC., T/A/D/B/A Northwood Realty Co.

Superior Court of Pennsylvania.

Argued Sept. 9, 1986.

Filed Oct. 1, 1987.

562

---

Raymond G. Hasley, Pittsburgh, for appellant (at 1508 and 1509).

James N. Perich, Pittsburgh, for appellant (at 1572) and for appellee (at 1508 and 1509).

Kirby L. Boring, Pittsburgh, for appellee.

Before BROSKY, ROWLEY and POPOVICH, JJ.

ROWLEY, Judge:

In March, 1982, Louise Barbagallo, executrix of the Estate of Carl Barbagallo, deceased, executed an exclusive real estate listing agreement with Northwood Services, Inc. (Northwood) for Northwood to sell a residence which was owned by the Decedent and which had been occupied by himself and his sister, Louise Barbagallo (Miss Barbagallo), until his death. Northwood was a member of the West Penn Multilist Group (West Penn) which in turn was a member of the Greater Pittsburgh Board of Realtors (Board of Realtors). In early December, 1982, a sales representative for Northwood showed the residence to Miss Pamela Roberts two times. On neither occasion was Miss Barbagallo at home. Upon viewing the property it was apparent that the second floor of the house was equipped to be used as a separate apartment, and there was some discussion between Miss Roberts and Northwood's representative concerning the use of the property as a duplex dwelling. On December 22, 1982, Miss Roberts signed an agreement of sale to buy the property. The closing was set for March 1, 1983.

Previously, in April, 1982, the U.S. Consumer Products Safety Commission had issued a ban on the future use of ureaformaldehyde foam insulation (UFFI), effective August 1, 1982.[1] Northwood received notice of the ban through the Board of Realtors and West Penn. Northwood also received an Advisory, sent by the National Association of Realtors to its members, that contained suggested forms to be used to determine from owners/sellers the type of insulation used in a house which was listed for sale. The members were advised to disclose to both buyers and sellers the presence of UFFI, if known, and the possible effects of UFFI. The Advisory specifically stated that "the existence

1. The ban was subsequently invalidated by the United States Fifth Circuit Court of Appeals which found that the Commission had failed to prove that UFFI did not create an unreasonable risk of injury. *Gulf South Insulation v. U.S. Consumer Products Safety Commission,* 701 F.2d 1137 (5th CCA, 1983).

of a potential health hazard from U.F.F.I. is a material fact concerning the condition of property...."

Beginning on January 1, 1983, West Penn Multilist supplied its members, including Northwood, with forms requiring the owner of property to indicate whether or not the house to be sold contained UFFI and to sign the form. This form was much simpler than the forms accompanying the National Association of Realtors' Advisory and did not indicate what UFFI is or what potential risks were involved with its use. The form also contained no place for a buyer's signature indicating that the buyer had been informed of the nature of UFFI or of the seller's knowledge or lack of knowledge as to its presence in the property to be purchased. West Penn required that its members have the forms completed for any new property listing to be included in the multilist catalogue after January 1, 1983. In addition, during January, 1983, the Northwood sales representatives were directed to have the disclosure forms completed for properties listed prior to January 1, 1983. Also at the beginning of 1983, the Allegheny County Health Department issued a guideline which stated that .1 ppm. of formaldehyde fumes may cause irritation to normally healthy people.

In February, 1983, The Northwood listing agent for the Estate property, Miss DiPasquale, contacted Miss Barbagallo to ascertain what type of insulation was in the residence. Miss Barbagallo did not know what kind of insulation had been used, but she did know that Decedent had contracted to have it blown into the walls. On February 10, 1983, the disclosure form showing that Miss Barbagallo did not know the type of insulation was placed in Northwood's file for the Estate property. The certificate contained the name, initials and purported signature of Miss Barbagallo. However, the signature was misspelled and was not written by Miss Barbagallo.

On March 5, 1983, following the March 1, 1983 closing, Miss Roberts had a contractor examine the house to estimate the cost of certain renovations. In examining the

house to make his bid, the contractor noted that the insulation looked like UFFI, and he notified Miss Roberts of his suspicions and of what he knew about UFFI. Miss Roberts immediately had the insulation tested and the tests confirmed that the insulation was UFFI. On March 14, 1983, Miss Roberts sent a letter to the Estate demanding rescission of the deed on the basis of the existence of UFFI, but the Estate refused. Thereafter, on March 19, 1983, Miss Roberts had the air inside the house tested for formaldehyde fumes. The test results showed that there were .1 ppm. formaldehyde fumes inside the house. Miss Roberts and her mother, who suffered from sinus problems and allergies and with whom Miss Roberts had intended to occupy the house, never moved into the residence.

Following the Estate's refusal to rescind the deed, Miss Roberts filed, in the Orphans' Court Division, a claim against the Estate based on the seller's failure to disclose the presence of UFFI. She sought rescission of the sale and the deed, reimbursement of the closing costs, and such additional relief that the Court deemed necessary to make her whole. In the alternative, if the property were sold, she claimed damages for all of her losses resulting from the sale. The case was transferred from the Orphans' Court Division to the Civil Division of the Court where the claim was treated as a complaint in equity. The Estate joined Northwood as an additional defendant alleging that if the Estate were found liable, the Estate was entitled to contribution and indemnity. The Estate also requested that punitive damages be assessed against Northwood. Northwood then joined Miss DiPasquale averring that Miss DiPasquale was directly liable to Miss Roberts, or, if Northwood was found liable, Miss DiPasquale was liable to Northwood for contribution and indemnity.

Following commencement of the suit, Miss Roberts, with the permission of the Estate, attempted to sell the residence. In January, 1984, Miss Roberts received an offer of $20,000 for the house contingent upon her obtaining a double-occupancy permit. The local building inspector and the Zoning Hearing Board denied Miss Roberts' request for

the occupancy permit, so the prospective buyer did not purchase the real estate from Miss Roberts. Miss Roberts appealed the decision of the Zoning Hearing Board to the Court of Common Pleas which, subsequent to the filing of the appeal in the instant case, rejected Miss Roberts' contention that use of the property as a duplex was a non-conforming use, and denied the double-occupancy permit. The basis of the trial court's decision was that although the subject property encompassing 5,040 square feet had been used as a duplex until 1976, from 1976 until 1982, when the Borough enacted a new zoning ordinance requiring a minimum lot size of 6,000 square feet, the property was *not* used as a duplex, but was shared by the Decedent and Miss Barbagallo.

Following the filing of an adjudication and Decree Nisi, and consideration of exceptions filed by the parties to the court's findings of facts and conclusions of law, a Final Decree was entered denying Miss Roberts' claim for rescission but entering judgment in favor of Miss Roberts and against Northwood in the amount of $9,420 (the cost of removal of the UFFI plus interest); judgment was also entered in favor of the Estate, and in favor of Miss DiPasquale.[2] Miss Roberts has appealed. On appeal, she argues that the trial court should have granted her request for rescission of the sale of the property because of the mutual or unilateral mistake as to the type of insulation and a misrepresentation as to the house being useable as a duplex.[3] In the alternative, Miss Roberts argues that judgment should have been entered against both Northwood and the Estate and that she should have received compensatory

---

**2.** No one has appealed the judgment in favor of Miss DiPasquale and therefore, the issue of the propriety of the judgment in her favor is not before us.

**3.** The trial court made no specific findings of fact and conclusions of law regarding the duplex zoning issue, although in its opinion of December 2, 1985, written in response to the exceptions to the decree nisi, it purported to address and dispose of the issue despite the lack of a final order granting or denying the double-occupancy permit. We find it unnecessary to address either the trial court's procedural treatment of the issue or the merits of the issue because of our disposition of the other issues raised in this appeal.

damages not only for the cost of removal of the UFFI, but also for loss of rental income, her loss from having to make mortgage payments on a house in which she did not live, and the loss of an opportunity to otherwise invest the money she used for a downpayment. Finally, Miss Roberts argues that punitive damages should have been assessed against Northwood because it intentionally failed to disclose the presence of UFFI.

Northwood has also appealed and argues on appeal: 1) that a sales representative has no duty to investigate or disclose the type of insulation in an existing structure which is being sold; 2) that UFFI has not been proven to be harmful to healthy people; 3) that the type of insulation in a structure is not a material fact which must be disclosed; 4) that the sales representatives are independent contractors and not agents and therefore, Northwood cannot be liable for the failure of the sales representative to provide notice of the UFFI, or alternatively, if the sales representative is an agent, Northwood cannot be liable because the agent was found to be not liable; and 5) if Northwood is liable, it is entitled to contribution and indemnity from the sales representative. The appeals have been consolidated for disposition, and we reverse.

Our scope of review of an adjudication in equity is well established. The chancellor's findings of fact are to be accorded the weight of a jury verdict and will not be reversed on appeal if the evidence is adequate to support them and they are not founded upon erroneous inferences and deductions or errors of law. *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976). Conclusions of law, however, may be reviewed at the liberty of the appellate court. *Presbytery of Beaver-Butler v. Middlesex*, 507 Pa. 255, 489 A.2d 1317, *cert. den.*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). Facts supported by competent evidence are binding. *Id.*

## I. Liability for Nondisclosure of UFFI

The trial court, by analogy, based its finding of liability of Northwood on those cases which have held that sellers or

their agents are liable to purchasers for nondisclosure or misrepresentation with regard to termite infestation. *Quashnock v. Frost*, 299 Pa. Super. 9, 445 A.2d 121 (1982); *Glanski v. Ervine*, 269 Pa.Super. 182, 409 A.2d 425 (1979); *Shane v. Hoffmann*, 227 Pa.Super. 176, 354 A.2d 532 (1974). The liability in these cases was premised on § 353 of the Restatement, Second, of Torts which provides that a vendor of land who fails to disclose or conceals any condition which involves an unreasonable risk to people on the land is subject to liability.

In the instant case, Miss Roberts presented no evidence from which the court could conclude that UFFI created an unreasonable risk of harm. The evidence of the federal ban on UFFI which was in effect when the sale of the property occurred is not evidence that UFFI created an unreasonable risk because the Fifth Circuit Court of Appeals specifically rejected the ban for failure to prove that UFFI constituted an unreasonable risk of harm. *Gulf South Insulation v. U.S. Consumer Products Safety Commission*, 701 F.2d 1137 (5th Cir.1983). The evidence which was admitted demonstrated only that UFFI was in the house and that there were .1 ppm. formaldehyde fumes within the house. Miss Roberts presented no evidence that .1 ppm. formaldehyde fumes create an unreasonable risk or that the formaldehyde fumes within the house emanated from the insulation. Because there was no proof that the UFFI caused an unreasonable risk of harm, the trial court's reliance on *Quashnock, Glanski,* and *Shane* was misplaced.

However, a vendor or his agent may be liable not only for failure to disclose a dangerous condition but also for failure to disclose material information. Section 550, Restatement, Second, of Torts provides:

§ 550 Liability for Fraudulent Concealment

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the

nonexistence of the matter that the other was thus prevented from discovering.

Liability under this section is encompassed by the Supreme Court's rule that fraud may arise by: 1) the making of a knowingly false representation of fact; 2) an intentional concealment of true facts which is calculated to deceive the other party; or 3) a nonprivileged failure to disclose certain facts to the other party. *DeJoseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644 (1958). Here there is no evidence that the executrix or the decedent himself knew of the type of insulation. Therefore, the Estate could not have fraudulently concealed or misrepresented knowledge of UFFI. For this reason, there is no basis for concluding that the Estate is independently liable to Miss Roberts.

■ An agent, however, may be liable to an injured third party for his own deceit in a transaction on behalf of his principal. Section 348 Restatement, Second, of Agency. Here no one disputes the trial court's finding that Northwood was the agent of the Estate. Therefore, Northwood, as agent of the Estate, may be liable to Miss Roberts for its own deceit. Because the deceit in this case is not misrepresentation but nondisclosure, we look to the elements of fraudulent concealment as discussed in § 550 of the Restatement, Second, of Torts as the standard by which to examine Northwood's actions.

Under § 550, the concealment must be intentional and it must relate to material information. The trial court concluded that Northwood had an intentional policy of nondisclosure concerning UFFI. This conclusion has not been contested on appeal and is supported by the record. The trial court also found that Northwood believed information concerning UFFI to be material to a sale of real estate. Our review of the record shows that not only did Northwood believe that knowledge of UFFI was material, but on the facts of this case, knowledge of UFFI was in fact material.

■ Because of the unique relationship of Northwood's former owner and its president with the Board of Realtors

and the West Penn Multilist, Northwood was undeniably aware of the federal ban on UFFI in new housing prior to the sale of the property in this case, and it was also aware of the potential health risks involved in the use of UFFI. Northwood also knew that the professional Board of Realtors had recommended to its members, including West Penn Multilist, that information concerning UFFI was material and that it should be disclosed to both buyers and sellers and that some effort should be made to try to ascertain whether UFFI had been used in properties being listed for sale. Moreover, at least, prior to the closing, the Allegheny County Health Department had issued a regulation indicating that certain levels of formaldehyde fumes could cause eye, nose and throat irritations to normally healthy people. Thus, at the time that the property was sold in this case, the combination of the federal ban, the local guideline, and the professional organization's recommendation demonstrated that knowledge of the possible effects of UFFI and of its existence was information material to a real estate transaction.

■ We find further support for this conclusion in comment (b) to § 550 which suggests that there is liability for fraudulent concealment if the defendant prevents the plaintiff from making an investigation he would otherwise have made. In this case, Miss Roberts made an investigation into the type of insulation in the house immediately upon learning that UFFI might be in the house and upon learning of the possible effects from UFFI. Considering her prompt action upon obtaining knowledge of UFFI and considering that she intended to live in the house with her mother who suffered from sinus problems, we find it indubitably clear that by failing to disclose information regarding UFFI, Northwood succeeded in preventing Miss Roberts from investigating the insulation in the house prior to the signing of the agreement of sale or the closing, and that had Miss Roberts been advised of UFFI prior to the sale, she would have conducted such an investigation. Because Northwood

intentionally did not disclose the information concerning UFFI and because such information was material to the real estate transaction in this case, we conclude that Northwood was liable to Miss Roberts for fraudulently concealing information.

[7] Although Northwood argues that it cannot be liable either because the sales representative was not its agent but an independent contractor or, if she is found to be an agent, because the sales representative was found to be not liable, this argument minimizes the fact that Northwood, independent of the actions and knowledge of the sales representative (e.g., that the insulation had been blown into the house), owed a duty to Miss Roberts. Because Northwood had a policy of nondisclosure, at least as to purchasers of property, and because Northwood did not instruct the sales representatives to disclose UFFI to purchasers, Northwood is independently liable. It is unnecessary to determine whether the sales representative was an agent or an independent contractor, and it is irrelevant that the agent was found to be not liable.

■ The conclusion that Northwood is liable to Miss Roberts for fraudulently concealing information about UFFI does not terminate our inquiry as to the liability for nondisclosure of UFFI. Contrary to the conclusion of the trial court that the Estate could not be liable for Northwood's fraud because it neither authorized nor knowingly permitted Northwood to conceal information concerning UFFI, we conclude that the Estate, too, is liable.

In *Aiello v. Ed Saxe Real Estate,* 508 Pa. 553, 499 A.2d 282 (1985) (which had not been decided when the trial court rendered its decision) the Supreme Court held that

a principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment,

although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them.

*Id.*, 508 Pa. at 562, 499 A.2d at 287 (footnotes omitted). The reason for the Court's holding was that to hold otherwise would violate public policy and permit the person who held out his agent as trustworthy not only to escape liability for the frauds of his agent, but also to enjoy the benefits of his agent's fraud at the expense of an innocent third party.

The Estate argues that *Aiello* is distinguishable from the instant case because the Court in *Aiello* did not hold that a principal *must* be liable, but that it *could* be liable. We find this argument unpersuasive. The Estate contends that the specific question before the Court in *Aiello* was whether the trial court had erred when it had charged the jury that the principal *"could"* be found liable for the agent's misrepresentations. Although the propriety of the jury charge was the reason for the appeal in *Aiello*, the Court made explicitly clear in stating its holding and the reason for its holding that it was reaffirming the rule that a principal *is* liable to third parties for the deceits of his or her agent. If the rule simply were that a principal *could*, but did not have to, be liable for the frauds of its agent, the rule would not effectuate the public policy of protecting innocent third parties. Rather, it would leave to the fact finder to determine, on an *ad hoc* basis, whether the innocent third parties should be protected. Because the *Aiello* Court adopted the rule of a principal's liability for its agent's fraud in order to ensure protection of innocent third parties, we hold that the principal is liable for the agent's conduct, and the liability of the principal, where the agent has acted fraudulently, is not a question for the fact finder but is a question of law for the court. *See also: Cohen v. Blank*, 359 Pa.Super. 93, 518 A.2d 582 (1986) (Judgment n.o.v. reversed because the principal's scienter at the time of the agent's misrepresentation is not necessary to hold the principal liable).

## II. Remedy

Miss Roberts argues that the trial court erred by refusing to grant her rescission of the deed. The general rule is that where a purchaser has been harmed by a real estate broker's misrepresentations, the purchaser has a choice of remedies. The purchaser may elect to rescind the deed and to seek a return of the purchase money, or the purchaser may elect to sue for damages. *National Building Leasing Inc. v. Byler*, 252 Pa.Super. 370, 381 A.2d 963 (1977). The election as to which remedy to pursue belongs to the purchaser. 2 COA 691 §§ 23 and 24. This general rule is also supported by § 259 of the Restatement, Second, of Agency, which provides that where one is induced to enter into a transaction by untrue material representations made by an agent authorized to conduct preliminary or final negotiations, the person deceived has the right to elect to rescind the transaction.

In this case, Miss Roberts was first informed about UFFI by her contractor on March 5, 1983. She immediately had the insulation tested, and on March 14, 1983, gave notice of her election to rescind. When the Estate refused to rescind the deed, Miss Roberts then filed the claim against the Estate seeking rescission. These facts clearly evidence Miss Roberts' election to rescind the deed as was her right. Because Miss Roberts unambiguously evidenced her election to rescind, and because this decision was communicated forthwith to the Estate, the trial court erred in denying her the remedy of rescission.

Because Miss Roberts has elected the remedy of rescission, Miss Roberts should be returned to the position she was in before the sale occurred. To accomplish this she is entitled to receive the purchase money and any other cash expenditures, such as closing costs, which were required to purchase the property. She ought also to account for any items of income or expense, such as fire insurance and taxes or any repairs to the property, arising since the date

she took title in order to determine the amount necessary to be paid by the Estate to Miss Roberts to restore her to the status quo. See: *Arcari v. Hatch*, 94 Montg.Co.L.R. 366 (1971); *Baker v. Simon*, 92 Montg.Co.L.R. 289 (1970); *Shotz et ux. v. Sherzer et ux.*, 1 D & C2d 568 (1954).

Miss Roberts also argues that the trial court erred in denying her punitive damages against Northwood for its intentional and outrageous deceit. However, there can be no award of punitive damages until the plaintiff proves actual damages. *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959); *Sulecki v. Southeast National Bank*, 358 Pa.Super. 132, 516 A.2d 1217 (1986). Election of the remedy of rescission precludes recovery of damages. The remedies of rescission and damages are mutually inconsistent and one is entitled to either one remedy or the other but not both. 37 Am.Jur.2d Fraud and Deceit § 328. The remedies are inconsistent because the one is based on the abrogation of the sale and the other is based on the continued existence of the sale. 77 Am.Jur.2d Vendor and Purchaser § 554. Because the punitive-damage claim is dependent upon the establishment of compensatory damages and because when one is permitted to rescind a transaction one is forclosed from pursuing a compensatory-damage claim, where one is permitted to rescind a transaction, one cannot also obtain punitive damages. Therefore, Miss Roberts is not entitled to receive any punitive damages.

Judgment in favor of the Estate is reversed; judgment against Northwood in the amount of $9,420 is vacated. The case is remanded to the trial court to enter a decree rescinding the sale. At that time the trial court can determine the appropriate amount of the purchase money to be returned to Miss Roberts and any other sums necessary to return Miss Roberts to the position she was in before the sale. On remand, the court shall also resolve the Estate's claim against Northwood for contribution or indemnity. Jurisdiction is not retained.