**Jeffries-Baxter v. Incognito**

*Jonathan J. Sobel,* for plaintiff.
*Lionel Sharpless,* for defendants, Incognito.
*John Mullen,* for defendant Eichler & Moffley Realtors.

JONES II, *J.,* September 26, 2005—This action arises from the sale of residential property. Plaintiff Roxanne Jeffries-Baxter instituted a lawsuit against David and Cynthia Incognito (defendant sellers), Elfant Wissahickin Realtors, plaintiff's real estate agent, and Eichler & Moffley Realtors, defendant sellers' realtor, alleging fraud and rescission of contract for failure to disclose the existence of mold. Presently before the court are the parties' respective motions for summary judgment. For the reasons discussed below, summary judgment is granted

as to defendants Elfant Wissahickin Realtors and Eichler & Moffley Realtors and denied as to defendant sellers.

## BACKGROUND

Defendant sellers decided to sell their home at 511 East Mt. Pleasant Avenue in Philadelphia. Thereafter, plaintiff expressed an interest to purchase the property and was given a copy of defendant sellers' disclosure statement along with the disclosure statement prepared by the owners who occupied the premises prior to defendant sellers.

On or about April 24, 2003, plaintiff entered into a written agreement of sale to purchase the property located at 511 East Mt. Pleasant Avenue, Philadelphia, Pa. The agreement of sale obligated plaintiff to pay the sum of $425,000 to defendant sellers. For the purposes of the transaction, plaintiff was represented by real estate broker Elfant Wissahickon Realtors. Defendant seller was represented by Eichler & Moffley Realtors (collectively referred to as defendant realtors).

The agreement of sale contains a release provision which provides in relevant part:

"Buyer hereby releases, quit claims and forever discharges Seller, All Brokers, their Licensees, Employees and any Officer or Partner of any one of them and any other Person, Firm or Corporation who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and all of the consequences thereof. Whether now known or not, which may arise from . . . environmental hazards [or] . . . any defect or condition on the property." (Agreement of sale ¶25.)

The agreement also contains an "integration" clause, which states, in relevant part:

"(A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by seller, brokers, their licensees, employees, officers or partners are not a part of this agreement unless expressly incorporated or stated in this agreement. It is further understood that this agreement contains the whole agreement between seller and buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, agreement will not be altered, amended, changed or modified except in writing executed by the parties.

"(B) It is understood that buyer has inspected the property before signing this agreement (including fixtures and any personal property specifically scheduled herein) or has waived the right to do so, and has agreed to purchase the property in its present condition unless otherwise stated in this agreement. Buyer acknowledges that brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the property, the age or condition of the components, environmental conditions, the permitted uses or of conditions existing in the locale where the property is situated; nor have they made a mechanical inspection of any of the systems contained therein." (Agreement of sale ¶26.)

Attached to the agreement of sale is a notice titled "Notice and Information." The notice states in pertinent part:

"Mold/fungi and indoor air quality: Indoor mold contamination and the inhalation of bioaerosaols (bacterial, mold spores, pollen and viruses) have been associated with allergic responses including upper respiratory congestion, cough, mucous membrane irritation, fever, chills, muscle ache or other transient inflammation or allergy. Claims have asserted that exposure to mold contamination and bioaerosols has led to serious infection, immunosuppresion and illness of neuro or systemic toxicity. Sampling of indoor air quality and other methods exist to determine the presence and scope of any indoor contamination. Because individuals may be affected differently, or not affected at all, by mold contamination, the surest approach to determine the presence of contamination is to engage the services of a qualified professional to undertake an assessment and/or sampling. Assessments and samplings for the presence of mold contamination can be performed by qualified industrial hygienists, engineers, laboratories and home inspection companies that offer these services. Information pertaining to indoor air quality is available through the United States Environmental Protection Agency and may be obtained by contacting IAQ INFO, P.O. Box 37133, Washington, D.C. 20013-7133, 1-800-438-4318." (Attachment to the agreement of sale.)

Additionally, the agreement of sale contained a property inspection contingency clause which the plaintiff exercised. Plaintiff retained Daniel Banks P.E. to inspect the property for structural, mechanical and electrical deficiencies. Banks inspected the property on May 16, 2003, in plaintiff's presence. An inspection for hazardous materials, including mold, was not performed.

After receiving and reviewing the report written by Banks, plaintiff wrote a letter dated May 21, 2003, and gave defendant sellers an opportunity to negotiate repairs identified in the letters.[1]

On May 24, 2003, plaintiff and defendant sellers signed an endorsement to the agreement of sale and therein agreed that at the time of settlement sellers would credit plaintiff the sum of $12,750 in lieu of making the repairs.

The parties proceeded to settlement on June 30, 2003. In July 2003, plaintiff allegedly discovered that the property was subject to mold damage and was structurally unsound. Plaintiff alleges that she became ill and noticed water spots on the wall leading down into the basement and in the laundry room. Plaintiff allegedly called a plumber who allegedly stated the problem was mold. Plaintiff allegedly moved out of the house in August 2003.

Thereafter plaintiff filed a complaint in equity seeking rescission of the agreement of sale (Count I) and damages for fraudulent misrepresentation (Count II). An amended complaint was subsequently filed.

## DISCUSSION

### I. *Standard of Review*

In determining whether to grant summary judgment, the trial court must view the record in the light most fa-

---

1. Plaintiff alleges in the amended complaint that she justifiably relied upon the report of Daniel Banks and his inspection of the structural, mechanical and electrical components of the property in proceeding with the purchase of the property. Amended complaint ¶11. Daniel Banks is not a defendant in this action.

vorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Potter v. Herman,* 762 A.2d 1116, 1117-18 (Pa. Super. 2000). Summary judgment is proper only when the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Id.* In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment. *Basile v. H & R Block Inc.,* 563 Pa. 359, 363, 761 A.2d 1115, 1118 (2000).

## II. *Plaintiff Has Failed To Produce Sufficient Evidence To State a Prima Facie Case of Fraud Against Defendants Eichler & Moffley Realtors and Elfant Wissahickon Realtors*

Count II of the amended complaint purports to state a claim for fraudulent misrepresentation against Eichler & Moffley and Elfant Wissahickon Realtors. Specifically, plaintiff alleges that defendant realtors failed to disclose the existence of mold at the property. In real estate transactions, fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose. *Blumenstock v. Gibson,* 811 A.2d 1029 (Pa. Super. 2002).

To state a claim for fraudulent inducement, a party must allege "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into

relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 560 (1999) (citation omitted); see also, *Blumenstock v. Gibson, supra* at 1034.

Keeping these principles in mind, the court is left to consider whether Eichler & Moffley Realtors and Elfant Wissahickon Realtors knew of the existence of mold at the subject property and misrepresented its existence to plaintiff. Real estate agents are responsible for misrepresentations, both willful and negligent. *Aiello v. Ed Saxe Real Estate Inc.,* 508 Pa. 553, 499 A.2d 282 (1985).

Even when a real estate broker's representation is innocent, a material misrepresentation could be found where he was bound to ascertain the truth before making the representation. *Glanski v. Ervine,* 269 Pa. Super. 182, 192, 409 A.2d 425, 430 (1979). In *Glanski,* the seller informed the broker of termite infestation and directed the broker to inform potential buyers, which he did not. Deliberate non-disclosure is as culpable as a misrepresentation as an intentional affirmation of falsity. *See Quashnock v. Frost,* 299 Pa. Super. 9, 15, 445 A.2d 121, 124 (1982). The duty to disclose known latent defects is imposed upon the seller and his broker with whom he deals. *Id.*

Reviewing the record in a light most favorable to plaintiff, it is clear that plaintiff fails to make out a prima facie case of fraudulent misrepresentation against defendant realtors. Plaintiff fails to produce any evidence that defendant realtors knew that mold existed on the property.[2] Plaintiff relies upon the following facts to estab-

---

2. In order to hold an agent liable for concealing a defect from the buyer actual knowledge is required. See 68 Pa.C.S. §7310.

lish her claim for fraud: (1) the seller resided in the subject home for a short period of time, approximately one month; (2) the freshly painted wall leading to the basement on the right hand, painted sometime between plaintiff's initial "walk-through" and settlement on the home; (3) conflicting stories as to why the property was being sold; and (4) the failure of defendant sellers to identify a water problem in the basement area on the disclosure statement which was identified in the prior owner's property disclosure statement. These facts fail to establish that defendant realtors were aware that mold existed. At this stage in the litigation plaintiff cannot rely upon mere allegations. As the non-moving party, plaintiff is required to come forward with evidence in the record establishing the facts essential to the cause of action, in this case, fraud. See Pa.R.C.P. 1035.3(a)(2). Unsupported assertions and conclusory accusations cannot create genuine issues of fact as to the existence of fraud. *Blumenstock v. Gibbons, supra.* Consequently, since plaintiff fails to establish that defendant realtors knew that mold existed at the property, this court must grant summary judgment.[3]

### III. *Summary Judgment Is Inappropriate as It Pertains to Defendant Sellers*

Count II of the amended complaint also purports to state a claim for fraudulent misrepresentation against defendant sellers. Fraud is a generic term used to describe "anything calculated to deceive, whether by single

---

3. In Count I of the amended complaint, plaintiff seeks rescission of the sales agreement. A right to rescission may only be granted against a seller. See *Boyle v. Odell,* 413 Pa. Super. 562, 605 A.2d 1260 (1992). Since defendant realtors are not the sellers of the property, plaintiff's claim for rescission is also dismissed against these defendants.

act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Sewak v. Lockhart,* 699 A.2d 755, 759 (Pa. Super. 1997) (quoting *Moser v. DeSetta,* 527 Pa. 157, 163, 589 A.2d 679, 682 (1991)). Concealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser. *Id.* "Active concealment of defects *known to be material* to the purchaser is legally equivalent to an affirmative misrepresentation." *Id.* (quoting *Sevin v. Kelshaw,* 417 Pa. Super. 1, 11, 611 A.2d 1232, 1237-38 (1992)). (emphasis in original)

The Restatement (Second) of Torts §550 provides that a vendor of real property, or its agent, may be liable for failure to disclose "material information" concerning the property.[4] To be liable under this section, the concealment must be intentional and must relate to material in formation. *Roberts v. Estate of Barbagallo,* 366 Pa. Super. 559, 569, 531 A.2d 1125, 1130-31 (1987). A misrepresentation or concealment will be considered "material" if "it is of such character that had it not been made, ... the transaction would not have been consummated." *Sevin,* 417 Pa. at 10, 611 A.2d at 1237. Finally, liability for fraudulent concealment exists if a defendant prevents a plaintiff from making an investigation he would have

---

4. Section 550 Liability for fraudulent concealment provides as follows:

"One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."

otherwise made. *Roberts,* 366 Pa. Super. at 570, 531 A.2d at 1131.

Sellers claim that plaintiff failed to satisfy two of the elements necessary to state a claim for fraud, a representation and justifiable reliance. After considering the evidence presented in a light most favorable to the plaintiff, a jury could reasonably conclude that the defendant sellers knew that mold existed on the property and failed to disclose same to plaintiff. According to plaintiff: (1) the seller resided in the subject home for a short period of time; (2) the wall leading to the basement on the right hand side was freshly painted sometime between plaintiff's initial "walk-through" and settlement on the home; (3) conflicting stories existed as to why the property was being sold; and (4) the conflicting disclosure statements as to the existence of a water problem in the basement area. If proven, a jury could reasonably conclude that the defendant sellers knew that mold existed and failed to disclose same to plaintiff. Accordingly, the court finds that genuine issues of material fact exist which preclude the entry of summary judgment.

In the alternative, defendant sellers argue that the parol evidence rule acts as a bar to plaintiff's claim. Pennsylvania case law makes a distinction between barring parol evidence to vary the terms of the agreement and admitting parol evidence to prove fraud in the inducement. *Blumenstock v. Gibson,* 811 A.2d. 1029, 1037 (Pa. Super. 2002) (citing *1726 Cherry St. Partnership v. Bell Atlantic Properties,* 439 Pa. Super. 141, 150 n.2, 653 A.2d 663, 668 n.2 (1995)). In the latter case, the theory holds that, since fraud induced the agreement, no valid agreement came into being and parol evidence is ad-

missible to show that the alleged agreement is void. *Id.* Nevertheless, the case law clearly holds that a party cannot justifiably rely upon prior representations yet sign a contract denying the existence of those representations. *Id.* at 152, 653 A.2d at 669. An exception to this general formulation of the impact of the parol evidence rule has been created for "real estate inspection" cases. See *LeDonne v. Kessler*, 256 Pa. Super. 280, 389 A.2d 1123 (1978).

The exception, commonly referred to as the *LeDonne* test, requires a balancing between the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause. *LeDonne v. Kessler*, 256 Pa. Super. 280, 294, 389 A.2d 1123, 1130 (1978).

Application of the balancing test to the facts presently before the court leads the court to conclude that evidence of the fraudulent misrepresentations is not barred by the parol evidence rule. Here, plaintiff testified that prior to the settlement she was not concerned about mold since the seller's disclosure did not disclose any indication of same. (Plaintiff's deposition January 28, 2005, pp. 161-62.) Daniel Banks, the home inspector, inspected the property on May 16, 2003, and found no visible signs of mold at the time the inspection was performed. (Banks dep. pp. 31, 69, 96, 97.) Plaintiff also testified that she observed a freshly painted wall in the basement sometime between the initial walk-through and settlement on the home. (Plaintiff dep. January 28, 2005 pp. 180-81.)

Based on the foregoing it is reasonable to conclude that the mold was not ascertainable by reasonable inspection.

On the other hand, the integration clause in the agreement of sale provides in pertinent part that: (1) the agreement contains the whole agreement between the parties; (2) the buyer inspected the property and agreed to purchase the property and agreed to purchase it as a result of said inspection and not in reliance upon any representation made by the seller; and (3) the buyer agreed to purchase the property in its present condition unless otherwise specified in the agreement. This contractual integration clause, however, covers only those conditions *reasonably apparent* from an inspection of the premises and not those which have been concealed. After consideration of the balance between the buyer's knowledge of the defect and the integration clause, the court concludes that the integration clause does not bar evidence of the alleged fraudulent misrepresentations. See *Mancini v. Morrow,* 312 Pa. Super. 192, 458 A.2d 580 (1983) (integration clause in sales contract did not preclude evidence of fraudulent concealment of water damage in basement); *National Building Leasing Inc. v. Byler,* 252 Pa. Super. 370, 381 A.2d 963 (1977) (integration clause in sales agreement would not bar evidence that seller fraudulently concealed existence of debris-fill hole, knowing it made the property unsuitable for intended use); *Glanski v. Ervine,* 269 Pa. Super. 182, 409 A.2d 425 (1979) (judgment upheld allowing rescission of contract for sale of property "as is" where vendor fraudulently concealed extensive termite damage); *Silverman v. Bell Savings & Loan Association,* 367 Pa. Super. 464, 533 A.2d 110 (1987) (rescission of contract allowed where seller fraudulently misrepresented zoning of property).

Accordingly, defendant sellers' motion for summary judgment is denied.[5]

## CONCLUSION

For the foregoing reasons, the motions for summary judgment of defendant realtors are granted and all claims are dismissed against them and the motion for summary judgment of defendant sellers is denied.

An order consistent with this opinion will follow.

## ORDER

And now, September 26, 2005, upon consideration of the motions for summary judgment of defendant Echler & Moffley Realtors (cn 051372), defendants David and Cynthia Incognito (cn 051542) and defendant Elfant Wissahickon Realtors (cn 051174), plaintiff's responses in opposition, memoranda, in accord with the contemporaneous memoranda opinion to be filed forthwith and all matters of record, it hereby is ordered and decreed that

(1) Defendant Echler & Moffley's motion for summary judgment is granted and all claims are dismissed against it.

(2) Defendants David and Cynthia Incognito's motion for summary judgment is denied.

(3) Defendant Elfant Wissahickon Realtor's motion for summary judgment is granted and all claims are dismissed against it.

---

5. The court finds that any arguments made with respect to the release provision contained within ¶25 of the agreement of sale is premature and must await resolution of the issue concerning fraudulent inducement.