Gregory J. STAR, et al.

v.

Lawrence J. ROSENTHAL, et al.

Civil Action No. 11–7278.

United States District Court, E.D. Pennsylvania.

Aug. 9, 2012.

Andrew Patrick Baratta, Baratta Russell & Baratta, Huntingdon Valley, PA, for Gregory J. Star, et al.

Steven E. Hoffman, Tallman Hudders & Sorrentino, P.C., Allentown, PA, for Lawrence J. Rosenthal, et al.

## MEMORANDUM

DALZELL, District Judge.

Plaintiffs Gregory J. and Luba Star (collectively, the "Stars") bring suit against defendants Lawrence J. and Phyllis B. Rosenthal[1] (collectively, the "Rosenthals"), asserting several Pennsylvania state-law claims arising out of the Stars' purchase of a house from the Rosenthals.

The Stars allege that this home proved subject to water infiltration. They further claim that though the Rosenthals knew the house had this defect, the Rosenthals nonetheless made false representations to the Stars in order to induce them to buy the house and later to refrain from bringing suit.

Specifically, the Stars allege six claims[2] against the Rosenthals: (1) violation of Pennsylvania's Real Estate Seller Disclosure Law ("RESDL"), 68 Pa. Cons.Stat. Ann. §§ 7301, et seq.; (2) fraudulent misrepresentation; (3) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201–1, et seq.; (4) negligent misrepresentation; (5) breach of contract; and (6) unjust enrichment. The Stars plead their fifth and sixth counts in the alternative to the other claims they present.

The Rosenthals have filed a motion to dismiss all claims in the complaint, to which the Stars have responded. For the reasons we discuss below, we will grant the Rosenthals' motion to dismiss in part, as to Count I of the complaint, and will direct them to file an answer to the remaining allegations of the complaint.

## I. *Factual Background*

In ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6), we must " 'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.' " *Ordonez v. Yost*, 289 Fed.Appx. 553, 554 (3d Cir.2008) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993)). We may " 'consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,' " *Brown v. Daniels*, 128 Fed.Appx. 910, 913 (3d Cir.2005) (quoting *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004)), where a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (emphasis and internal quotation marks omitted). As our Court of Appeals has explained, this means that we may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Since the

---

1. The docket lists the latter defendant's name as "Phyllis B. Rosenthal," in obvious error.

2. Because the amount in controversy exceeds $75,000 and the parties are completely diverse, we have jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Stars' complaint relies in part on certain documents, we will review both the allegations of the complaint and the features of those documents that are material to the Rosenthals' motion to dismiss.

According to the Stars, they are husband and wife living at 1708 Brittany Drive in Ambler, Pennsylvania, while the Rosenthals are husband and wife living in West Palm Beach, Florida. Pls.' Compl. ¶¶ 2–3. The Stars aver that on August 21, 2008 they entered into an Agreement of Sale (the "Agreement") with the Rosenthals to purchase the Rosenthals' residential property (the "house") located at 1708 Brittany Drive in Ambler. The Rosenthals had lived in the house continuously from its construction in 1987 until its sale to the Stars. *Id.* ¶¶ 4–6.

The Agreement provided that "[t]he following are part of this Agreement if checked: ... Seller's Property Disclosure [checked]." Ex. A to Pls.' Compl. ("Agreement") § 34; *see also* Pls.' Compl. ¶ 7. The Seller's Property Disclosure Statement (the "Disclosure") that the Rosenthals provided to the Stars included the following questions: (1) "Are you aware of any water leakage, accumulation, or dampness within the basement or crawl space?," Ex. B to Pls.' Compl. ("Disclosure") § 4(b); (2) "Are you aware of any fire, storm, water, or ice damage to the property?," *id.* § 6(f); (3) "Do you know of any past or present drainage or flooding problems affecting the property?," *id.* § 16(b)(2); (4) "Are you aware of any insurance claims filed relating to the property?," *id.* § 19(g); and (5) "Are you aware of any material defects to the property, dwelling, or fixtures which are not disclosed elsewhere on this form?" *Id.* § 19(h). The Rosenthals checked "No" in response to each of these questions. *Id.* §§ 4(b), 6(f), 16(b)(2), 19(g)-(h); *see also* Pls.' Compl. ¶¶ 8, 10–13. The Disclosure also included the question, "Are you aware of any past or present water leakage in the house or other structures?", and in response the Rosenthals checked "Yes" and wrote "upstairs hall bathroom windows leaked, replaced in 1993." Disclosure § 6(a); *see also* Pls.' Compl. ¶ 9.

The Stars further allege that during a September 3, 2008 home inspection they attended with an (unnamed) inspector they had hired, Lawrence Rosenthal "specifically denied any water infiltration in the basement of the House." Pls.' Compl. ¶ 19. During the same inspection, when Lawrence heard the inspector say that "any signs of water penetration in the basement occurred while the House was being built and before it was fully enclosed," he did not correct this statement. *Id.* ¶ 20.

According to the Stars, in the summer of 2009 "the area experienced heavy directional rain and wind which pounded against the front of the House," causing "water to literally flow over the front wall of the basement of the House," *Id.* ¶ 15. During each subsequent storm involving heavy directional rain, water flowed in and through the living room windows, in and around the front door, and over and through the front wall of the basement of the house. *Id.* ¶¶ 16–17. Nonetheless, during an October, 2009 visit by the Rosenthals at which the Stars recounted their recent experience of basement water infiltration, the Rosenthals denied having had any prior water infiltration. *Id.* ¶ 18.

The Stars claim that in the summer of 2011 they discovered files in the house's basement—titled "Lib. Mut.—Claim—90–91" and "LM/Cutler Lawsuit 91–92"—that the Rosenthals had left behind. *Id.* ¶¶ 21–22. The Stars allege that these files demonstrate that the Rosenthals experienced significant and persistent water infiltration throughout the house and that they filed an insurance claim and lawsuit related to

this infiltration. *Id.* ¶ 23. The Stars also aver that during that same summer they found photographs dated between 1990 and 1992 that the Rosenthals had taken of extensive water infiltration through the windows, front door, and basement of the house that mirrored the infiltration the Stars experienced. *Id.* ¶ 25.

The Stars allege that each of the Rosenthals' answers on the Disclosure was false, and that the Rosenthals knew them to be false at the time they made them.[3] *Id.* ¶¶ 14, 26–30. The Stars claim that had they "been told the truth about the extensive and persistent water infiltration to which the House had been subjected for more than 20 years, they would not have purchased the House." *Id.* ¶ 31. They thus suggest that they have suffered damages that include: (1) the purchase price of the house; (2) all improvements to the house made since its purchase; (3) all other costs associated with purchasing and maintaining the house; (4) all costs associated with remediation efforts aimed at stemming the flow of water into the house; (5) diminution in the value of the house; (6) "mental anguish, anxiety, and emotional distress"; and (7) "such other further injuries and damages as will be demonstrated through discovery of this matter." *Id.* ¶ 35.

Notably, the Agreement contains the following release language at § 27:

> Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement, or in violation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

## II. *Analysis*

The Supreme Court has explained that "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). To survive this inquiry, a pleading may not simply offer "labels and conclusions," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

Rather, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of each cause of action. *Phillips v. County of Allegheny,* 515 F.3d

---

**3.** The Stars elaborate that the Rosenthals' response to Disclosure § 6(a) was "purposefully incomplete" and designed to "create[ ] the appearance of candor as a means to gain the Stars' trust and confidence." *Id.* ¶ 30.

224, 234 (3d Cir.2008) (internal quotation marks omitted). Moreover, a defendant may raise an affirmative defense "on a Rule 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Constr'n Corp.*, 570 F.2d 1168, 1174 n. 10 (3d Cir.1978). Thus, a complaint may fail to survive a motion to dismiss either because (1) the plaintiff has failed to supply well-pled allegations in support of one or more elements of a cause of action, or (2) the allegations of the complaint themselves establish that the plaintiff cannot prevail.

We will take up each of the Stars' claims in turn.

### A. Count I: Violation Of Pennsylvania's RESDL

The Stars aver that "[p]ursuant to 68 Pa. Con. Stat. Ann. § 7301(11), Defendants are liable to Plaintiffs for any and all actual damages suffered as a result of Defendants' violation of the Real Estate Seller's Disclosure Law, and the damages alleged in this complaint were proximately caused by Defendants' intentional concealment of known defects." Pls.' Compl. ¶ 43. The Rosenthals respond that "the Plaintiffs failed to file their RESDL claim within the applicable two-year statute of limitations and, in fact, missed the statutory deadline by more than a year," so that "Count I of Plaintiffs' Complaint is time-barred and should be dismissed." Defs.' Mem. in Supp. of Mot. Dismiss ("Defs.' Mem.") at 6.

■ The Stars retort that "there is no doubt that [they] have alleged facts sufficient to trigger Pennsylvania's tolling principles. The only issue is whether tolling principles apply to claims under the RESDL, which is a question of first impression," Pls.' Resp. to Def.'s Mot. Dismiss ("Pls.' Resp.") at 8. The Stars suggest that we should answer this question in the affirmative (1) based on the legislative history of the RESDL, *id.* at 8–9; and (2) by analogy to other consumer protection statutes and common law claims. *Id.* at 9–11.

Under 68 Pa. Cons.Stat. Ann. § 7303,

Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form). A signed and dated copy of the property disclosure statement shall be delivered to the buyer in accordance with section 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

Section 7308 adds that "[i]n completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect." Section § 7311 provides that

(a) General rule.—A residential real estate transfer subject to this chapter shall not be invalidated solely because of the failure of any person to comply with any provision of this chapter. However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this chapter. This subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law.

(b) Statute of limitations.—An action for damages as a result of a violation of this chapter must be commenced within two years after the date of final settlement.

■ As our Court of Appeals has explained, "[w]hen a state's highest court has not spoken on a subject, we must attempt to predict how that tribunal would rule. In making such determinations, we give due deference to the decisions of lower Pennsylvania courts." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir.1996) (citations omitted). Our research suggests, however, that no Pennsylvania state or federal court has considered whether § 7311(b) is subject to tolling. We therefore must interpret this provision from scratch, drawing on the plain language of the statute as well as Pennsylvania jurisprudence on tolling, limitations periods, and statutory interpretation.

The Stars correctly note that "Pennsylvania courts apply both the discovery rule and the doctrine of fraudulent concealment to toll a statute of limitations," Pls.' Resp. at 7. *See, e.g., Pulli v. Ustin,* 24 A.3d 421, 425 (Pa.Super.2011) (" 'In Pennsylvania, there are two well-recognized legal constructs that toll the running of the statute of limitations: the discovery rule and the doctrine of fraudulent concealment.' ") (quoting *Coleman v. Wyeth Pharmaceuticals, Inc.,* 6 A.3d 502, 510 (Pa.Super.2010)). But as the Stars themselves recognize, *see* Pls.' Resp. at 8, Pennsylvania courts distinguish between "statutes of limitations" and "statutes of repose," explaining that

The difference between statutes of repose and statutes of limitations is that statutes of limitation[s] are procedural devices which bar recovery on a viable cause of action, where statutes of repose are substantive in nature because they extinguish a cause of action and pre-

clude its revival. In addition, statutes of limitation[s] begin to run from the time of an injurious occurrence or discovery of the same, whereas statutes of repose run for a statutorily determined period of time after a definitely established event independent of an injurious occurrence or discovery of the same.

*Miller v. Stroud Twp.*, 804 A.2d 749, 752 (Pa.Commw.Ct.2002) (quoting *Altoona Area Sch. Dist. v. Campbell*, 152 Pa. Cmwlth. 131, 618 A.2d 1129, 1134 (1992)) (brackets in *Miller* ).

■ Critically, tolling doctrines are inapplicable to statutes of repose unless such doctrines are explicitly incorporated into the given statute. *See, e.g., Westinghouse Elec. Corp./CBS v. W.C.A.B. (Korach),* 584 Pa.411, 883 A.2d 579, 588 n. 11 (2005) ("[A] statute of repose may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute. At the end of the time period specified in the statute, the cause of action ceases to exist, unless the claimant can bring himself within any tolling provision enunciated in that statute."); *Commw., Dept. of Transp., Bureau of Driver Licensing v. Grubb*, 152 Pa.Cmwlth. 178, 618 A.2d 1152, 1155 n. 1 (1992) ("By definition, statutes of repose set a designated event for the statutory period to start running and they provide that at the expiration of the period, any cause of action is barred regardless of the usual reasons for tolling.") (internal quotation marks omitted); *DaimlerChrysler Corp. v. Commw.*, 885 A.2d 117, 121 (Pa.Cmwlth.2005) ("Because it is a statute of repose, taxpayers' rights to a refund are extinguished and once quashed, due process demands nothing because there are no rights to 'process.' Therefore, Seller's due process rights are not subject to equitable tolling as Seller suggests.") (citation omitted).

■ As the Supreme Court of Pennsylvania has explained, "the critical distinction in classifying a statute as one of repose or one of limitations is the event or occurrence designated as the 'triggering' event," *Westinghouse Elec. Corp.*, 883 A.2d at 588 n. 11. While a statute of limitations has as its triggering event "the point at which all the elements of the action have coalesced, resulting in a legally cognizable claim," a statute of repose "typically sets the triggering event as something other than the point at which the cause of action arises." *Id.* *See also Abrams v. Pneumo Abex Corp.*, 602 Pa. 627, 981 A.2d 198, 211 (2009) (" 'Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.' ") (quoting *City of McKeesport v. W.C.A.B. (Miletti)*, 560 Pa.413, 746 A.2d 87, 91 (2000)). The triggering event under § 7311 is clearly *not* the accrual of a cause of action since such a claim coalesces once (1) "any person ... willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter," and (2) "actual damages [are] suffered by the buyer as a result of a violation of this chapter." 68 Pa. Cons.Stat. Ann. § 7311(a). Instead, § 7311(b) (emphasis added) provides that "[a]n action for damages as a result of a violation of this chapter must be commenced *within two years after the date of final settlement*," an event that will often fail to coincide with the occurrence of the two elements described above. Section 7311(b) thus appears to impose a statute of repose, not a statute of limitations.

■ The Stars note that § 7311(b) is entitled "Statute of limitations," not "Statute of repose." Pls.' Resp. at 8. But a title has minimal probative value regarding the actual character of this provision given that other Pennsylvania statutory provisions that indisputably impose statutes of repose are nonetheless sometimes identified by the General Assembly as statutes of limitations. *Compare, e.g.,* 13 Pa. Cons. Stat. Ann. § 2725 (defining "Statute of limitations in contracts for sale") *with Nationwide Ins. Co. v. General Motors Corp./Chevrolet Motor Div.*, 533 Pa. 423, 625 A.2d 1172, 1174–75 (1993) ("Section 2725 sets tender of delivery as the point at which the cause of action accrues ... [I]n breach of warranty cases the four-year statute of limitations is essentially a statute of repose."); 77 Pa. Stat. Ann. § 602 ("[S]aid *limitations* shall not take effect until the expiration of two years from the time of making of the most recent payment prior to date of filing such petition.") (emphasis added) *with Zafran v. W.C.A.B. (Empire Kosher Poultry, Inc.)*, 713 A.2d 698, 701 n. 12 (Pa.Commw.Ct.1998) ("The period of limitations set forth in section 315 of the Act, 77 P.S. § 602, like other statutes of limitations under the Act, is not a pure statute of limitations but is a statute of repose."); 42 Pa. Cons.Stat. Ann. § 5536(b)(2) (referring to "[t]he *limitation* prescribed by subsection (a)") (emphasis added) *with Miller*, 804 A.2d at 752 ("[S]ection 5536 of the Judicial Code is a statute of repose.").

The Stars also suggest that when the RESDL was enacted, "[t]he legislature reasoned that the two-year period would typically be adequate time to bring a claim because most 'problem[s] with [a] property [are] discovered within the first several weeks of occupancy,' and the statute 'gives the buyer two years to discover what the problems may be.' " Pls.' Resp. at 9 (quoting 1996 Pa. Leg. J.—Senate 2139 (Jun. 18, 1996) (statement of Sen. Corman)) (brackets in Pl.'s Resp. and emphasis omitted). 1 Pa. Cons.Stat. Ann. § 1921(c)(7) provides that "[w]hen the words of the

statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: ... [t]he contemporaneous legislative history."

While we believe that the language of § 7311 unambiguously demonstrates that it imposes a statute of repose, to the extent this remains open to debate the legislative history that the Stars cite only fortifies our conclusion that this provision does not impose a statute of limitations. After all, if the tolling principles normally applicable to statutes of limitations—including the discovery rule—were meant to apply to the RESDL, there would have been no need for Senator Corman to explain that "if there is a problem with the property it is discovered within the first several weeks of occupancy, and here it gives the buyer 2 years to discover what the problems may be." 1996 Pa. Leg. J.—Senate 2139 (June 18, 1996) (statement of Sen. Corman). *See also* 1996 Pa. Leg. J.—Senate 2138 (June 18, 1996) (statement of Sen. Brightbill) ("What this does is shortens the time period from 6 years to 2 years. What that means is that unless a consumer quickly and accurately determines what the problems are with a property, they lose their cause of action."). The suggestion by Senators Corman and Brightbill that a plaintiff might *lose* a cause of action under the RESDL if a problem or defect is not discovered within two years of final settlement underscores that tolling principles do not apply to § 7311.

Finally, the Stars contend that "[g]iven Pennsylvania's concern for protecting consumers from fraud and misrepresentation, and the Commonwealth's broad application of tolling principles in general, the Pennsylvania Supreme Court would almost certainly find that tolling principles are to be applied to claims under the RESDL," Pls.' Resp. at 11. In support of this argument the Stars point to the applicability of toll-

ing to claims under the UTPCPL, negligence and fraud claims, and certain federal claims. *Id.* at 9–11. Of course, whether tolling applies to common law and federal causes of action is an inquiry that sheds little light upon whether it similarly applies to the RESDL. As for the UTPCPL, our capacity to analogize this statute to the RESDL is hampered by the wholly different language the Pennsylvania General Assembly used to impose temporal limits upon claims under the UTPCPL. *See, e.g., Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 494 (1987) ("[T]here being no express limitation on private actions under the UTPCPL, and since their claims fall within the ambit of that statute, the six-year 'catchall' limitations period of section 5527(6) of the Judicial Code, 42 Pa. Cons. Stat. Ann. § 5527(6), applies."); 42 Pa. Cons.Stat. Ann. § 5527 ("Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.").

We further note that, as Judge Wettrick of the Allegheny County Court of Common Pleas has observed, the "Disclosure Law expands the seller's obligations and the buyer's remedies" as compared to the common law. *Vaughn v. Drab,* 73 Pa. D. & C.4th 550, 556 (Pa.Com.Pl.2005). Given the potency of the RESDL, it should not be surprising that the Pennsylvania General Assembly chose to impose strict limits on when claims under this statute could be brought.

In the end, the language of Section 7311(b) makes plain that this statute is one of repose not amenable to tolling, and thus the Stars' arguments against this conclusion do not persuade. The complaint makes clear that the date of final settlement preceded October of 2009—when the

Rosenthals allegedly visited the Stars in the house[4]. But the Stars did not file their complaint in this action until November 22, 2011—more than two years later. Section 7311(b) thus bars the Stars from bringing suit under the RESDL, and we will grant the Rosenthals' motion to dismiss Count I of the complaint.[5]

### B. Counts II & IV: Misrepresentation

In support of their fraudulent misrepresentation claim, the Stars contend that "[d]efendants made their representations, both prior to and after the sale, intending that the Plaintiffs would rely upon their representations, and the Plaintiffs did, in fact, justifiably rely to their detriment on the Defendants' misrepresentations." Pls.' Compl. ¶ 48. As for their negligent misrepresentation claim, the Stars claim that "misrepresentations were made by the Defendants under circumstances in which the Defendants ought to have known of their falsity" and "with the intent to induce Plaintiffs to purchase the House," id. ¶¶ 58–59, causing damages to the Stars. Id. ¶ 60. The Rosenthals respond that "Plaintiffs' fraudulent and negligent misrepresentation claims are barred by the gist of the action doctrine because they are nothing more than contract claims masquerading as tort claims." Defs.' Mem. at 7. The Stars retort that "Defendants' misrepresentations and omissions occurred prior to signing the AOS and were violations of duties imposed by common law

and statute, and not by the AOS. Thus, the gist of the action doctrine has no application." Pls.' Resp. at 16.

As Judge McVerry noted last year, "[t]he Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine," though "both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted it would do so." PPG Indus., Inc. v. Generon IGS, Inc., 760 F.Supp.2d 520, 527 n. 1 (W.D.Pa.2011). Judge Rambo described the gist of the action doctrine in Sarsfield v. Citimortgage, Inc., 707 F.Supp.2d 546, 553 (M.D.Pa.2010) (citations and internal quotations marks omitted), as follows:

> Tort actions lie for breaches of duties imposed by law as a matter of social policy, whereas contract actions lie only for breaches of duties imposed by consensual agreements between particular individuals. Thus, a claim is limited to a contract claim when the parties['] obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts. On the other hand, if the contract is merely collateral to the wrong described, the existence of a contract does not prevent recovery in tort. Pennsylvania courts' have recognized four areas where the gist of the action doctrine precludes recovery in tort: (1) where liability arises solely from the contractual relationship between the parties; (2)

---

4. The Stars allege that the Rosenthals made representations during this visit that "were consistent with representations made ... prior to the sale," Pls.' Compl. ¶ 18, and the only logical inference from this averment is that the Rosenthals' October, 2009 visit postdated the final settlement.

5. The extinguishment of the Stars' RESDL claim does not, however, mean that the Stars cannot bring a breach of contract claim pred-

icated upon allegedly false disclosures the RESDL mandates and which were incorporated into the agreement of sale. See Rendon v. Ragans, 2009 WL 1514471, at *3 (W.D.Pa. 2009) (citations omitted) ("[T]he RESDL does not make itself the sole remedy here for an action emanating from a sale of real property. At the same time, a breach of contract claim under Pennsylvania law is subject to a four-year limitations period.").

when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

The gravamen of the Rosenthals' argument is that "absent the Agreement and the Seller Disclosure, the Rosenthals' purported obligation to reveal known, material defects to the Plaintiffs would not have materialized." Defs.' Mem. at 8. This is plainly untrue under Pennsylvania law. As the Superior Court of Pennsylvania explained in *Roberts v. Estate of Barbagallo,* 366 Pa.Super. 559, 531 A.2d 1125, 1130–31 (1987),

> a vendor or his agent may be liable not only for failure to disclose a dangerous condition but also for failure to disclose material information. Section 550, Restatement, Second, of Torts provides:
> § 550[.] Liability for Fraudulent Concealment
>> One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.
> Liability under this section is encompassed by the Supreme Court's rule that fraud may arise by: 1) the making of a knowingly false representation of fact; 2) an intentional concealment of true facts which is calculated to deceive the

other party; or 3) a nonprivileged failure to disclose certain facts to the other party.... Under § 550, the concealment must be intentional and it must relate to material information.

In the context of sales of real property, a seller not only has an obligation not to intentionally conceal material information, but must also avoid innocent misrepresentations of material facts. *See Boyle v. Odell,* 413 Pa.Super. 562, 605 A.2d 1260, 1265 (1992) ("[I]f it is determined that a purchaser in a real estate transaction has suffered from fraud by the seller, even in the nature of an innocent misrepresentation of a material fact, a right of rescission is established. Moreover, the purchaser is given the election of remedies; he may seek to rescind the deed, or in the alternative, may sue for damages.") (citations omitted).

In *Onconome, Inc. v. Univ. of Pittsburgh,* 2009 WL 5064481, at *11 (W.D.Pa.2009), Judge Schwab emphasized that "the focus of analysis under [the gist of the action] doctrine is whether actions lie from a breach of the duties imposed as a matter of social policy or from the breach of duties imposed by mutual consensus pursuant to contract." The Rosenthals' obligations to (1) disclose known, material defects to the Stars and (2) avoid innocent misrepresentations as to material facts arose independently of the Agreement and the Disclosure, though these obligations were to an extent codified in the parties' contract.[6] As a result, the gist of the action doctrine does not bar the Stars' misrepresentation claims, and we will deny the Rosenthals' motion to dismiss Counts II and IV of the complaint.

---

**6.** In a sense, the Stars' breach of contract claim duplicates their misrepresentation claims-not vice versa, as commonly seen when the gist of the action doctrine is invoked. *Cf. Sarsfield,* 707 F.Supp.2d at 553

("Pennsylvania courts have recognized four areas where the gist of the action doctrine precludes recovery in tort: ... (4) when the tort claim essentially duplicates the breach of contract claim.").

### C. *Count III: Violation Of The UTPCPL*

Under Count III of the complaint, the Stars aver that "[u]nder the UTPCPL, 73 P.S. § 201–2(4)(xii), it is unlawful for one to engage in any deceptive or fraudulent conduct which creates confusion or misunderstanding in the sale of real estate" and that "[t]he fraudulent misrepresentations of Defendants were intentionally false and deceptive and created a misunderstanding on the part of Plaintiffs with respect to their purchase of the House." Pls.' Compl. ¶¶ 52–53. The Rosenthals counter that (1) "[t]he language of that section [§ 201–2(4)(xii) ] does not pertain to real estate transactions as Plaintiffs allege and is wholly inapplicable to the case at bar," Defs.' Mem. at 9–10, and (2) "[t]o the extent the Plaintiffs argue that their claim is based upon [73 Pa. Cons.Stat. Ann. § 201–2(4)(xxi) ] of the UTPCPL, Count III of Plaintiffs' Complaint should still be dismissed because Plaintiffs' claim is barred by the economic loss doctrine." *Id.* at 10. The Stars respond that "the economic loss rule cannot be applied to allow Defendants—who are clearly guilty of fraud—to escape statutory liability." Pls.' Resp. at 20.

Under 73 Pa. Stat. Ann. § 201–2(4),

"Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:

. . .

(xii) Promising or offering prior to time of sale to pay, credit or allow to any buyer, any compensation or reward for the procurement of a contract for purchase of goods or services with another or others, or for the referral of the name or names of another or others for the purpose of attempting to procure or procuring such a contract of purchase with such other person or persons when such payment, credit, compensation or reward is contingent upon the occurrence of an event subsequent to the time of the signing of a contract to purchase;

. . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

The Rosenthals are thus correct in their assertion that § 201–2(4)(xii) has no relevance to the facts of this case, and we will presume that the Stars bring Count IV pursuant to § 201–2(4)(xxi)—also known as the "catchall provision." [7] Section 201–3 provides in relevant part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful," and Section 201–9.2(a) establishes a private cause of action for:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any

---

**7.** We note that while there is some question as to whether the UTPCPL applies to transactions in real property, those Pennsylvania courts to consider the question have thus far concluded that it does. *See Schwartz v. Rockey,* 593 Pa. 536, 932 A.2d 885, 897 n. 15 (2007) ("[T]he Superior Court has held, based on policy considerations, that the private-right-of-action provision of the UTPCPL extends to real estate transactions, *see Gabriel v. O'Hara,* 368 Pa.Super. 383, 388–92, 534 A.2d 488, 491–93 (1987), although such decision has been subject to critical commentary as being inconsistent with the plain terms of the statute.").

person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

The Rosenthals challenge the Stars' assertion of a UTPCPL claim pursuant to the economic loss doctrine, which, as our Court of Appeals explained in *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995), "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." This doctrine "gained momentum," *id.*, in our Courts of Appeals's estimation, in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), where the United States Supreme Court held in the admiralty products liability context that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."

The doctrine received another infusion of energy from *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir.2002), in which our Court of Appeals concluded that (1) "the doctrine applies to transactions between manufacturers and ordinary consumers," *id.* at 674; (2) "the district court correctly applied the economic loss doctrine to appellants' fraudulent concealment claims," *id.* at 681; and (3) "the same policy justifications for applying the doctrine to appellants' common law intentional fraud claims support the doctrine's application to appellants' UTPCPL claims." *Id.* En route to these conclusions, *Werwinski* noted that "[a]lthough the Supreme Court of Pennsylvania has not ruled on the viability of the economic loss doctrine, an en *banc* panel of the Pennsylvania Superior Court adopted the doctrine largely as set forth in *East River*." *Id.* at 671 (citing *REM Coal Co. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128, 134 (1989)).

On the one hand, several formulations of the economic loss doctrine appear to suggest that it bars the Stars' UTPCPL claim. While the Stars' entitlement to economic losses [8] does not "flow[ ] only from a contract," *Duquesne Light*, 66 F.3d at 618, but rather from Pennsylvania's broader policies against intentional concealment and innocent misrepresentation of material facts respecting sales of real property, *see* Section II.B, *supra*, it nonetheless appears true that the Rosenthals' alleged violations of the UTPCPL " 'did not cause harm to the plaintiffs distinct from those caused by the breach of contract,' " *Werwinski*, 286 F.3d at 678 (quoting *Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F.Supp. 184, 201 (D.N.J.1989)), and that the " 'loss of the benefit of a bargain is the plaintiff's sole loss.' " *Id.* at 680 (quoting *Duquesne Light*, 66 F.3d at 619).

8. The Stars argue that "Defendants improperly categorize the Stars' damages as being limited to solely economic losses," since "certain of their damages are presently unknown and, given that their harm relates to long-term water infiltration issues, further investigation may reveal a mold problem." Pls.' Resp. at 18. Given that the Stars do not allege that they have suffered such injury in their complaint, we will not consider this allegation in ruling on the Rosenthals' motion. As for the Stars' claimed damages for emotional distress, "because claims for emotional distress are not compensable under the UTPCPL the fact that Plaintiffs have [pled] them is immaterial." *Sarsfield*, 707 F.Supp.2d at 559 n. 6.

■ Notwithstanding these formulations and the expansion of the doctrine in *Werwinski*, the above-cited cases nonetheless make clear that the doctrine is not meant to apply to transactions in real property. Thus, as the Supreme Court explained in *East River*, 476 U.S. at 871, 106 S.Ct. 2295 (emphasis added), "a *manufacturer* ... has no duty ... to prevent a *product* from injuring itself," and suggested that the need for a remedy in tort is reduced when "the *product* has not met the customer's expectations." *Id.* at 872, 106 S.Ct. 2295 (emphasis added). In *REM Coal*, 563 A.2d at 134 (emphasis added), the Pennsylvania Superior Court explained that the doctrine applied in actions "involving a *product* that malfunctions where the only resulting damage is to the *product* itself." And in *Werwinski*, 286 F.3d at 681 (emphasis added), which concerned a products liability class action, our Court of Appeals suggested that the economic loss doctrine was needed to avoid "exposing *manufacturers* to substantially greater liability." Critically, *Werwinski* prefaced its conclusion that the economic loss doctrine applies to the UTPCPL by noting that "the Pennsylvania UTPCPL ... only applies to products purchased for 'personal, family or household purposes,'" *id.* (quoting 73 Pa. Stat. Ann. § 201–9.2(a)), apparently unmindful that in *Gabriel*, 534 A.2d at 492–93, the Pennsylvania Superior Court concluded that "sales of real property [are] protected by the UTPCPL."

Pennsylvania courts have not hesitated to permit claims under the UTPCPL involving transactions in real property—even where plaintiffs claimed only economic losses. *See, e.g., Schwartz*, 932 A.2d at 887–88 ("This appeal involves a civil action initiated by home purchasers against the sellers for fraudulent non-disclosure and/or concealment of water infiltration.... Buyers pursued claims of common-law fraud and violations of the Unfair Trade Practices and Consumer Protection Law, initially seeking compensatory damages under both theories of relief, in addition to treble damages and attorneys' fees under the UTPCPL.") (remanding for Common Pleas Court to consider awarding treble damages under the UTPCPL); *Metz v. Quaker Highlands, Inc.*, 714 A.2d 447, 450 (Pa.Super.1998) ("[A]ware of the needs of the buyers, the seller failed to disclose and concealed the short-fall of the property, refused to rectify the matter when the problem was discovered and caused suit to be instituted to resolve the case. In light of such outrageous conduct, to allow the rescission merely of the sales agreement without imposing a corresponding penalty for fraudulent behavior in consumer-type cases would do violence to the intent and purpose of the law (UTPCPL) enacted specifically by the Legislature to curb and discourage such future behavior."); *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 759, 766 (Pa.Super.1999) ("This case involves a fraudulent residential real estate transaction.... [T]he Bakers bring their fraud claim under the UTPCPL; they may, therefore, be entitled to treble damages and attorney's fees in addition to restitution, and they make demands for the same.").

We therefore conclude that to the extent we are bound by our Court of Appeals's prediction as to how the Supreme Court of Pennsylvania would apply the economic loss doctrine to UTPCPL claims, *see, e.g., DeFebo v. Andersen Windows, Inc.*, 654 F.Supp.2d 285, 294 (E.D.Pa.2009) ("[T]his Court is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue."), *Werwinski* does not apply to transactions in real property. The economic loss doctrine therefore does not bar the Stars' claim under the UTPCPL and

we will deny the Rosenthals' motion to dismiss this claim.

### D. *Count V: Breach of Contract*

 The Stars plead their breach of contract claim in the alternative, averring that "Defendants materially breached the Agreement of Sale by making the misrepresentations and omissions described above." Pls.' Compl. ¶ 63. The Rosenthals respond that "the Agreement which ostensibly forms the basis of Plaintiffs' breach of contract claim contains a release which effectively bars claims by the Plaintiffs arising out of the condition of the property at the time of sale." Defs.' Mem. at 15. In fact, the release notes that "[s]hould Seller be in default under the terms of this Agreement, or in violation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity." Agreement § 27. Thus, to the extent the Rosenthals' alleged misrepresentations breached the Agreement, the Stars retain the right to bring a claim based upon this breach,[9] and we will deny the Rosenthals' motion to dismiss Count V of the complaint.

### E. *Count VI: Unjust Enrichment*

Finally, the Stars also assert an unjust enrichment claim in the alternative, alleging that "[t]he Defendants' retention of the full sale price of the House is wrongful because said money was obtained as the direct result of the defendants' intentional and knowing misrepresentations." Pls.'

Compl. ¶ 66. The Rosenthals suggest that "Plaintiffs' unjust enrichment claim must be dismissed because there is an express contract which governs the parties' relationship." Defs.' Mem. at 15.

 It is true that the Pennsylvania Supreme Court has "found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract." *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 259 A.2d 443, 448 (1969). But as Judge Robreno explained in *Philadelphia Housing Authority v. CedarCrestone, Inc.*, 562 F.Supp.2d 653, 656 (E.D.Pa.2008),

> This does not mean … that the existence of an express contract between the parties will always preclude a *quantum meruit* claim. Rather, the Court must inquire at the motion to dismiss stage whether there is any dispute as to the existence of the express contract, and whether the scope of the contract includes the transaction that is the basis for the *quantum meruit* claim.

*See also 18 KT.TV, LLC v. Entest Biomedical, Inc.*, 2011 WL 5374515, at *6 (M.D.Pa.2011) ("[C]laims for unjust enrichment can be pled in the alternative to breach of contract claims."). Moreover, as the Superior Court of Pennsylvania has explained, "[t]he general rule is that where a purchaser has been harmed by a real estate broker's[10] misrepresentations, the purchaser has a choice of remedies. The purchaser may elect to rescind the deed

---

**9.** The Stars' misrepresentation claims would also appear to survive the release clause, since such "clauses do not defeat a misrepresentation claim recognized under the *LeDonne* [*v. Kessler*, 256 Pa.Super. 280, 389 A.2d 1123 (1978)] balancing test." *Vaughn*, 73 Pa. D. & C.4th at 558. *See also Rendon*, 2009 WL 1514471, at *4 ("[E]ven where there is a clear 'as is' clause, Pennsylvania law

allows a claim to proceed on the basis of misrepresentation as to the condition of the property.").

**10.** While the language of *Roberts* expressly concerns a *real estate broker's* misrepresentations, the logic of the decision makes clear that this general rule applies to a *seller's* misrepresentations as to real property as well.

and to seek a return of the purchase money, or the purchaser may elect to sue for damages." *Roberts*, 531 A.2d at 1132.

■■ Thus, though the Rosenthals apparently concede that a contract exists between them and the Stars, the Stars may nonetheless opt to rescind this contract. Should they so elect, they would be entitled to sue for unjust enrichment on the basis of any improvements they have made to the house. Because the Stars have not yet chosen which remedy they will seek, we will permit them to plead an unjust enrichment claim in the alternative to the contract claim asserted in Count V of the complaint.

## ORDER

AND NOW, this 9th day of August, 2012, upon consideration of plaintiffs Gregory J. and Luba Star's (collectively, the "Stars'") complaint (docket entry # 1), defendants Lawrence J. and Phyllis B. Rosenthal's (collectively, the "Rosenthals") motion to dismiss the complaint (docket entry # 4), and the Stars' response in opposition thereto (docket entry # 6), and upon the analysis set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. The Rosenthals' motion to dismiss the complaint (docket entry # 4) is GRANTED IN PART;

2. Count I of the Stars' complaint (docket entry # 1) is DISMISSED WITH PREJUDICE; and

3. By August 23, 2012, the Rosenthals shall FILE an answer to the surviving counts of the complaint.